May it please the Court. Good morning, Your Honor. Counsel, I'm going to ask the Court to allow me to reserve two minutes for rebuttal. Okay. Keep your eye on the clock. It goes down. I beg your pardon? Keep your eye on the clock. It counts down. I will do that. We'll try to help. Your Honor, I'm prepared on all the issues that were briefed, but I would like to focus, with the Court's permission, on the argument regarding the constitutional right to speedy trial and the violation of that right in this particular case. This is the case, Your Honor, where the individual was on three counts for sending very livid and vivid threats to federal government officials regarding his concerns over an asbestos abatement problem in Las Vegas. His e-mails and letters and conversation with the government officials went beyond the pale in many instances and were outright vile. He was charged and at the beginning of trial, after the substitution of several counsel, an order was entered to have him evaluated for competency and then some 1,426 days later his trial began. This pretrial delay is roughly a five-year period. The issue before the Court this morning is whether that delay between indictment and trial actually violates not the statutory provision for speedy trial, I think that was waived, but for the constitutional right to speedy trial. The waiver issue, Your Honors, arises because under United States v. Lamb, a case decided in this circuit some 15 years ago, it is necessary for the defense counsel to raise a motion to dismiss to preserve the statutory right to speedy trial. That was not done in this case and while I think the statutory right was violated and I have briefed it, I am persuaded that on a proper application of the existing rules that right does not appear to have been properly preserved. The constitutional right, however, was preserved. The gentleman not 10 days before trial asserted on the record his insistence on his speedy trial rights. So we are left actually with a fairly clean record and a fairly clean set of persuasive decisions on this issue. The first one is Barker v. Wingo and Barker gives this Court a four-step analysis and the first one is the length of time. The length of time here is not record-breaking. I've seen delays as upwards of eight years, but this is a five-year delay and it goes well beyond the standard delays that this Court is accustomed to seeing. I will represent that the 1,426-day length meets the first Barker test. The second test under Barker is the reason for the delay. In some instances, like the Doggett case before the Supreme Court, the delay was due to abject governmental ineptitude. Mr. Doggett was arraigned and then they simply lost him. Can I interrupt? Certainly. The problem I have with this speedy trial argument on behalf of your client is that so much of this time was used up while he had not yet been declared competent to stand trial and there was substantial evidence that he was not competent to stand trial. If you exclude the period during which it appeared that he was not competent to stand trial and prior to which we had not yet had a determination of competency, I'm not sure we've got a speedy trial right, in fact, even with respect to the statute. With respect to the statute, I certainly have to agree and, Your Honor, his incompetency is a matter of judicial fact. It's law of the case. Justice O'Connor specifically said in Gillenwater 2, the second appeal in this matter, Your Honor, this is the third fully briefed representative appeal in this case. The second one, Gillenwater 2, Justice O'Connor ruled, and I think persuasively, that the cell requirement applied, that this gentleman had a right to be tried when he was competent. I don't have an issue with that. And so much of the delay, the length, is obvious. The reason for the delay... Wait a minute. You said there was five years between indictment and trial. There were 1,426 days. My math may be off, but... Whatever. Yes. You're including the time when he was incompetent. Yes, I am, because under the... What is the net if you take out that segment? The parties are in dispute. Under the statute, I calculate that we were 50 days over the 70 days allowed by the statute. The United States has a... How many days in your best case? Under the statute? Yes. I'm waiving it. No, no, counsel. You started off by the first factor being delay. Correct. And you said it's not the longest, but it's very long. So now you've said you acknowledge the notion that part of that delay is given over, that's the second factor, to his competency problem. So give yourself and your client the best shot at what that time period, the shortest time period that you would concede, and that's what's net left over of other reasons for the delay. I understand. And that is the second test under Barker v. Goodall. I know it is. I wanted to give you the number. 43 days pretrial before the competency ruling was entered, and then there was some 70 or some days after he was declared competent by letter, before he was found judicially competent by court order. Yes. And that may be the problem facing the court on this decision is whether the fact of competency, which is language, Your Honor, from the statute, not from the Constitution, whether the fact of competency in the statute is the fact as determined by a physician, or many months later after unexplained delays in getting him transported and such, whether those 50 extra days before he was brought to Spokane and before the court was able to get hearings arranged, those add together exceed 90 days. Okay, so you're saying the constitutional issue turns on a 90-day delay. No, I'm not. Okay. I'm saying that when someone is delayed, for whatever reason, when that delay is an excessive length and it prejudices his ability to defend, and here the defense is a defense to the sentence, I won't argue that he was prejudiced in his defense on guilt. I don't think there's a case for that. I don't think the record shows he was prejudiced at the guilt phase, but he was clearly prejudiced at sentencing. How do I come to that conclusion? Because his sentence under the guideline was 18 to 22 months. He spent 50 months, twice the presumed length of the maximum he could have received, in determining his competency. And so his arguments on sentencing, which is part of his defense, it doesn't go to guilt, but it is part of his defense, his defense on sentencing was eviscerated. This gentleman did more than twice the time in pretrial confinement in a federal institution in a psychiatric ward to be made competent. He was there twice as long as he would have been had he been convicted and sentenced under the normal guideline range. However, when we look at what you're really talking about, which as I understand it is the prejudice prong. Correct. I think the prejudice prong is the twist. I mean, I think that's where we are. The reason for delay, I don't think you've got anything there. But if we get to the prejudice prong, that's where we really are. I have to look at three things, don't I? Yes, that's correct. I look at the oppressive pretrial incarceration, and in that instance I think you're talking about that because how long was he incarcerated, what was his likely incarceration, what sentence did he get, how did he go. I think that's where you are, that's your argument. Second is minimize anxiety and concern of the accused. Correct. On the minimize anxiety and concern of the accused, it seems to me that the accused, or at least from the record, was worried about being convicted of this crime. That it was, frankly, we were trying to, the whole system was trying to make sure that he was not convicted of a crime he shouldn't have been convicted of, and if he wasn't able to help with his defense or able to help put on testimony which would keep him from being convicted of that crime, that would have been a tough thing. So I say when you look at minimize anxiety and concern of the accused, that that leans against your client. May I be heard on that? Yes. That's why I laid it out there for you. Thank you. Your Honor, I think that's a subjective test, first of all. It's not an objective test whether the defendant had anxiety or concern over his several-year delay in getting to trial. If it is a subjective test, or if it's a reasonableness test, either way, we look at the record. This gentleman fought being involuntarily medicated for three years. Yes, but he did not fight. I mean, the whole thing was he did not want to be convicted of this particular matter. I don't think you can say that, Your Honor. There's nothing in the record that suggests that other than he said, I'm not guilty. He, frankly, wanted to be arrested. He wanted to be arrested, but whether he wanted to be guilty or not, that's quite a different matter because you look at his testimony. His testimony would not suggest he's guilty. I mean, it would suggest that there are things which could make him guilty, and if we were looking at sufficiency of the evidence, some of his testimony would have got there, but that's why I worried about that particular factor. Your Honor, I'm puzzled that the defendant's anxiety and concern test could be resolved against him if his anxiety and his concern was to be found guilty and incarcerated. Of course he was anxious to not be found guilty, but he was held for all those years without a trial, arguing the whole time that he had a right to his bodily integrity to not be medicated against his will. He was overruled by Judge O'Connor, and I understand that, but this gentleman's fighting for his ability to refuse psychotropic medication. The anxiety this man suffered was tremendous.  All right. Isn't it the possibility that the defense may be impaired? Yes. Now, I don't think his trial defense was impaired. Well, it wasn't when we got to the end, but if he were not competent and he wasn't able to help, which he thereafter was ruled competent and able to help and able to do, it seemed to me that that certainly goes against your client. Not when we get to the sentencing aspect. No. We're talking about prejudice here. We're talking about the three factors I look at for the prejudice. If oppressive pretrial incarceration, you may have a point. Minimize anxiety and concern of the accused, we've at least been able to discuss. Limit the possibility that the defense may be impaired, he hasn't got a shot. May I address that? Sure. After the trial court and jury determined he was guilty, the case is not over. We do not in any law that I know of separate trial from punishment when we're looking at the prejudice to a defendant, for example, under the rule regarding exculpatory evidence. All of those rules apply to trial and to sentencing because sentencing is part of what judges do to a defendant before the trial is over. But you're focusing again on oppressive pretrial incarceration. No, I'm referring to the the defense may be impaired. Yes. He could not defend or even address sentencing because he was already more than twice the limit of the sentencing guidelines. But just a minute, just a minute. He did, and he asked that the sentence that he had would be time served and then supervised release, and that's exactly what he got. We're talking about limiting the possibility that his defense would be impaired if he is incompetent as the defense is being presented. I understand. Did it impair his ability to defend sentence? That's my question for the court. Was he impaired? I think, frankly, he got exactly what he wanted when he got there, time served and supervised release. Your Honor, at that point, he couldn't ask for less than time served. And let's be realistic. He'd already done 50 months on an 18-month sentence. But here's where your argument would take us. If we've got somebody charged with a crime and we can more or less calculate what the guideline sentence is likely to be, let's say 18 months, and he is clearly not competent and he's held in order to medicate, to help him become competent and so on, in your argument, as soon as he's been held in the mental facility or whatever capacity he's being held, as they try to determine or make him competent, under your argument, we've got to let him out because all of a sudden he's passed what the sentence would be and we don't have any adjudication of guilt or innocence. At some point, it cannot be lawful, in my view, to hold someone beyond any proportionate time that they would face on a finding of guilt because they're incompetent. Your Honor, what if he was looking at a 10-day sentence? Can we hold him two years for a 10-day sentence? Can we hold him four years for a month sentence? He had a year and a half sentence to do. I think your arguments are good, but they all address oppressive pre-trial incarceration, and I have three different elements to then look at in determining this, and frankly, it seems to me that the cases who look at all three of the elements, when they get down to C, limit the possibility the defense may be impaired, it goes to the highest level because we do not want to try a defendant who cannot be tried because he doesn't know what's going on, and he can't help with his own defense. Do we want to punish a defendant more than twice the guideline range because he is incompetent to be tried? I appreciate your question, but again, you're going with oppressive pre-trial incarceration. That's one of the elements. That's your best argument, and I appreciate you want to go back to your best all the time. But let's look at my element that I'm worried about is the impairment of his defense at all. Then let me address what a defense lawyer does at sentencing. We come before the court with our sentencing memoranda, one from the government, one from the defendant, and then a neutral statement from the probation office. All three admitted that there was no way to apply the guideline sentence to this gentleman. It was gone. He'd already done twice the amount. That's prejudice. Now, I understand that the court sees the flavor of my argument affecting pre-trial oppression, but the pre-trial oppression doesn't go to his sentence. It goes to the fact that he had to eat off metal trays, that he couldn't make a phone call that wasn't listened in by others, that he was involuntarily medicated under lawful rules, but that is oppressive in a pre-trial setting. I'm setting that aside, Your Honor, because I'm moving to sentencing, part of the constitutional guarantee under Baker v. Wingo, Barker v. Wingo, and at sentencing, what could anyone do? Your Honor, I think this gentleman should get the minimum guideline sentence of 18 months, and what's the judge going to look and say about that? That's the realistic part, and I appreciate that the court sees the overlap. I don't disagree with you, but I don't think that the court has taken proper recognition of what occurs at sentencing. We can't undo the extra years he did in jail. They can't be undone. He was incarcerated pre-trial, subjected to lawful, involuntary medication for years. What's the limit on this? Are we going to do this to someone for what length of time? Is there no standard? According, Your Honor, to your argument, there would be no standard. Here's my question at this point. That's too much. I'm very sympathetic to the argument, and if we take it really to an extreme that you did, which is not impossible, the maximum sentence was going to be 10 days or six months, and there's an incarceration for determination of competency or return to competency for a number of years, at some point that's just ridiculous. Are we at that point? So, here we are. He has been incarcerated for this long period. He ends up getting sentenced to time served because the period during which he was incarcerated pre-trial was longer than the sentence that he receives. So, what are we supposed to do? Set aside the conviction? We can't give him the time back. No, we can't, but he was unable to defend against the incarceration. Unable to defend against it. No, I understand that, but we can't give him the time back. Yes, we can under Barker v. Wingo. Well, we can undo the conviction. You see, that's my question. Yes. Because I'm not sure he's improperly convicted. In fact, you yourself say, well, no, I don't have a defense against the conviction. He was properly tried. He was competent. The evidence is there and pretty much overwhelming. So, what are we supposed to do about it? I see the question. Here's what I'm asking for. That the next time something like this occurs, there is no case law in this country on this issue. And a judge looking for guidance, a trial court judge looking for guidance, would not even know that necessarily this might be a factor. Going into a case, you never think it's going to last five years or four years or whatever it was. The courts need some guidance at some point, and there isn't any. What I'm asking for here, Mr. Gillenwater will never get his time back, and he's competent, and he recognizes he's in a better position in many respects. But he also knows this took too long. When he was ruled competent by the doctors, it was a month before the letter got to Spokane. It was a month before the judge scheduled a hearing. That hearing was continued twice. It ends up being an extraordinarily long time. It would have violated the statute, but for the fact that no motion to dismiss was filed. No one was watching. Why don't we hear from the other side? We've taken you ten minutes over time. I'm so sorry. We did it, and you didn't. Let's hear from the other side, and we'll give you a chance to respond. Good morning, Your Honors. May it please the Court. My name is Tim Ohms. I'm an assistant U.S. attorney in Spokane. So we're focusing on the constitutional right to speedy trial. Counsel begins with the statement that the period that we're looking at here is approximately five years. It actually is 47 months from the month that he was indicted, which was August of 2011, until his trial in June of 2015. Say that again? It was 47 months. Okay. So 47 months. So we're talking not quite four years? Yeah. The period of time is 47 months, and of that 47 months, 36 of those months were taken up with the defendant's appeals. So there was no way to move forward with the case, and those appeals went up to the defendant petitioning the Supreme Court. So those appeals began in December of 2011, right after he was declared incompetent, and they continued until December of 2014. So no treatment had started yet. He had been determined to be incompetent. Treatment had been ordered. But all of those remedies were on appeal, and it wasn't until I believe it was December 20th of 2014 that the Supreme Court order was issued, stating that the writ of certiorari was denied. Treatment then starts. And then we're in trial by June of 2015, within essentially six months of that. And that's after the period of time that the defendant's treated. The expert or the psychiatrist then determines that he's been restored to competency. Yes, there were delays in communicating that to the court, and I don't believe that those delays ultimately affect the statutory speedy trial right, but that's a separate argument which apparently has been waived. As I understand from counsel's argument in his opening brief, he talks about prejudice to the defendant being the maximum guideline for the crime was 24 months. So a 50-month wait in custody to get trial is prejudicial, irremediably prejudicial. That's his theory. And then if we subtract out the time for the competency segment, he disagrees, counsel disagrees with the calculation. But at least I understood him to say at least there was 90 days of pretrial detention before the competency declaration as well as the travel and hearing scheduling delays post return to competency declaration. So in that segment, I understand the thrust of his argument is that he's inherently prejudiced, regardless of the competency part, because by the time he's getting into court for sentencing, he's already put in more time in prison than the guideline sentence, the minimum. So counsel seems to be asking for an opinion that says in those kinds of circumstances, post release, post declaration of competency, there should have been absolute speed apparently to get the defendant into court so he could have his trial. And that if there were delays, not justifiable delays in having the hearing schedule and the transport or whatever, then government's out of luck right from the get-go. There's a constitutional violation. Now, I may be garbling up what counsel was saying, but that's how it's coming across to me. And I'm curious what your argument then is as to the facts when you look at the sentencing prejudice only. All right, looking at the sentencing prejudice, and I do have a calculation of how much time I believe was excludable, et cetera. That's in my brief. I tried to put together a table. I understand. And that was triggered by the court's conclusion of competency. Now, the length of time that the person's going to spend in sentencing, that is not necessarily a decision or consideration that's bound by the guidelines because the guidelines are advisory. We're not given that direction from the Supreme Court. Moreover, in the context of competency, as part of the process of the district court ordering the defendant to be medicated, which takes some time, one of the requirements is the court consider the extent of the delay. So that's sort of built into the process where the court is up front affirmatively considering how is delay going to impact this case. So if you have a case where a defendant's facing, for whatever reason, 10 days in jail, the balance of the argument would weigh in favor of the defendant that we're not going to proceed with a cell hearing on this case and the government's going to have to proceed with some type of civil commitment if that's available. Otherwise, there's simply no remedy available for the government. So the cell hearing itself is a very important hearing that has lots of procedural protections, and that was addressed in Gillenwater II. And one of those considerations was what is the length of the delay and what is it in relation to the possible sentences. Justice O'Connor looked at the maximum possible penalties as her guide and not necessarily at the fact that there were some guideline calculations that were obviously not binding on the court at sentencing. Looking at Barco v. Wingo, when the court talks about the impairment on the defendant from the delay, it says that the most serious of these is the last, which is that the defendant's defense will be impaired. And I think what the Supreme Court's looking at there, that is whether or not the defendant is going to be capable or impaired in defending himself on the charge. And the Supreme Court noted that that was the most important of those factors when it comes to the overall fourth factor of preventing oppressive pretrial incarceration. And the defense has conceded that it really had no impact on the defendant's ability to proceed effectively at trial. So in this case, the majority of the delay was caused by the defendant's pursuit of various appeals during a period of time that he wasn't competent. And then the remainder on each side of that, each edge of that, was from the defendant's either the fact that he was incompetent or the continuing fact that he was incompetent and the treatment that he went through. We just end up with conundrum after conundrum in this case. So he's pursuing these appeals while he's incompetent. And we're now holding that action against him. But he was incompetent. He's got some damn lawyer who's making these appeals for him. And if he's incompetent, by definition, he can't tell his lawyer what he's supposed to do. So how am I supposed to handle this? Am I supposed to hold this against him or hold it against his lawyer? I mean, what do I do with that? I don't think it's a question of holding it against him. He has the right to pursue that, but there are consequences for that, and one of the consequences is delay. This is a case where the defendant... Perhaps I'm not making myself clear. Holding it against him may not be the right way to say, but you're making an argument saying, well, you know, he brought this upon himself because he brought all these appeals. That's what took all the time. And had he simply allowed himself to be medicated, we wouldn't be in this situation. Well, he brought this upon himself while he was incompetent. That's correct, but the case cannot proceed. The point is, regardless of the reason, whether the government filed an appeal or the defendant, the case simply can't proceed while it's on appeal. Yeah, no, I get that. So it's not a question of trying to blame anyone for that. It's just a question of how do you consider it, how do you... No, no, that's precisely my question. What is the reason? And that's, again, that goes back to the, I believe it's the second factor, what is the reason for the delay? There is no evidence in the record, is there, that he did not want to appeal? Oh, no. Though incompetent. I mean, the frank part of it is his appeals were because he didn't want to be self-medicated. Now, whether he was incompetent to make that decision or not was never addressed by anybody below, but he appealed based on that, did he not? Yes. And he never said, I don't agree with that. Even though he was incompetent to say whether he agreed or not, there was nothing that said he disagreed with appealing because he didn't want to be medicated. No, he was very vocal about wanting to appeal, and he filed several pro se appeals on his own that ultimately were dismissed. I would point out as well, this is a case in which the defendant never challenged the government's detention order. That never happened in this case. Don't mistake me. I'm not as sympathetic to the government's position here. It's just I'm trying to figure out, we've got sort of wheels within wheels as we try to figure out what we deal with someone who is either incompetent or at least not declared to have been competent who is resisting things that might make him competent, and then we get a delay that's substantially longer than the likely sentence, which turns out actually to be longer than the actual sentence. Nothing seems to be working the way an orderly system should work, but I'm not sure there's any cure for it. I don't think the cure for it, given the procedure protections involved in the cell process, that once you get to and you have a court say, yes, I believe that the interest of justice and the interest in prosecuting this defendant are important enough that it justifies the delay. At the end of it, you say, well, now I don't feel that way. And the only remedy that seems to be available at this point is to set aside the conviction, which I think the other side has conceded is a valid conviction. They're trying to say that the sentence was too long. Well, yeah, it was, but it's been served. Is he still subject to supervised release? I don't know the answer to that. Yes. He is? How much longer? I don't recall the... Okay, and I don't see I've got a motion to relieve him from supervised release. I don't recall the period on that, but... Well, it was three years. Three years, yeah. In any event, Your Honors, I think under the standards that the court is required to follow, the delays in this case don't... Thank you. Yeah, thank you very much. We took you substantially over time. Why don't we put a minute on the clock? Quick points. His lawyer won the first appeal. That had to do with whether he had a right to be at his competency hearing. Second point I wanted to make is that the 36 months spent on appeals is a statutory exemption, but I don't see that it is categorically ever considered an exemption under the constitutional rule. It is an exemption categorically under the statute. One reason I'm jettisoning the statute is it actually erodes his rights in this very odd setting. The statute hurts him and actually makes his constitutional rights weaker. Lastly, the doctor's certification is found at ECR 335. That was on March 23rd. The trial began on June 29th, more than 90 days later. That's found at 331. That took too long. On a statutory basis, that took too long. But on a constitutional basis, I think it adds to this gentleman's anxiety, and it certainly prejudiced his right to those 90 days because now they're gone. They cannot be returned. But really, under U.S. v. Romero, which we decided in August of 2016, it wasn't even too long statutorily. I agree with that. The only way it could be too long is if it's a constitutional argument, not a statutory argument. My last point. The remedy, Your Honor? Deterrence. Okay. Thank both sides for their arguments. The case of United States v. Gilliland Water submitted for decision.
judges: W. Fletcher, Fisher, N.R. Smith